Beth Ann Onuska, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 3, 1982, before Judges MENCER, ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Scott L. Melton, Conte & Courtney,* for petitioner.

*Francine Ostrovsky,* Associate Counsel, with her *Michael S. Fedor,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., April 19, 1982:

This case comes before the Court on a claimant's appeal of a determination of the Unemployment Compensation Board of Review (Board) that she was not entitled to benefits under Section 402(b)(1) of the Unemployment Compensation Law (Act)[1] because she

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §751 *et seq.*

failed to prove that her voluntary termination was caused by necessitous and compelling reasons. We affirm.

The findings of the referee[2] indicate that claimant had been employed for slightly more than four years as a dental assistant when she was placed on probation for deteriorating work performance. About six weeks later she resigned, alleging (1) that her employer was performing unnecessary dental procedures on welfare patients, and (2) that he was billing the Commonwealth for services he had not provided. These activities had been going on during the entire period of her employment.

The referee also found that the claimant was not qualified to judge whether the controversial procedures were necessary or not, and that she was not involved in the alleged overbilling. Summarizing claimant's testimony, the referee went on to "find" that

the claimant voluntarily terminated her employment for the alleged reason she no longer wanted to be involved in the alleged unnecessary dental work which was allegedly being performed by her employer and the alleged illegal activities. . . .

Claimant relied on *Zinman v. Unemployment Compensation Board of Review*, 8 Pa. Commonwealth Ct. 649, 305 A.2d 380 (1973), in arguing that legal and moral pressures compelled her to resign. However, we find that *Zinman*, although relevant, is not indistinguishable from the case presently before us.

Our scope of review

in the absence of fraud, is confined to questions of law and a determination of whether the find-

---

[2] Although the Board is the ultimate finder of fact, since the Board here affirmed the referee's decision without further discussion, our analysis of the reasoning will, perforce, be referenced to the referee's decision.

ings of the Unemployment Compensation Board of Review are supported by the evidence, leaving to the Board questions of credibility and weight of the evidence and giving to the prevailing party the benefit of any favorable inferences which can reasonably and logically be drawn therefrom. (Emphasis omitted.)

*Horace W. Longacre, Inc. v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 176, 178, 316 A.2d 110, 111 (1974).

Our review of the record indicates that much of the evidence supporting the contested findings of fact can be found in the testimony of the claimant herself, who admitted that she had not been trained to recognize dental decay, and that her training was "for putting in fillings and answering the phone."[3] A significant[4] colloquy between claimant and her own lawyer, at the hearing before the referee was:

Q C/L: Do you feel that the Commonwealth of Pennsylvania was being charged for services that were, in fact, not performed?

A C: I wasn't even concerned about that. I was concerned about the patients.

Q C/L: Okay. We covered the patients. Do you feel that the State had been charged for services which were not rendered?

A C: Yes:

Q C/L: And what was your reason

A C: Well, they were rendered but not that I felt they were properly rendered. But I don't know to my knowledge if Doctor Sakol would send in something that wasn't done. But, you

---

[3] *Cf.* Finding No. 5.

[4] This colloquy directly refutes claimant's contention before this Court that her voluntary termination was prompted by the pressures of legal duty, her moral convictions and her justifiable fear of implication in what she honestly believed was criminal activity.

know, as far as what he did, some of that I felt was improper.

The testimony of the employer concerning the claimant's probationary status supports the finding concerning the deterioration in claimant's performance on the job. He also testified that the guidelines to which claimant objected were those which had been in effect for the preceding four years.

Since our examination of the record establishes that the findings are supported by competent evidence, we turn to the referee's analysis of the applicable law. The referee properly distinguished this case from *Zinman, supra,* since in that case the illegal procedures were newly instituted, and that claimant promptly objected to them.

This Court certainly does not condone the employer's billing practices with regard to welfare patients. However, it cannot, conversely, condone the use of the unemployment compensation system to assuage the conscience of an employee whose moral compulsions were awakened by the institution of a quota system which the bookkeeper[5] characterized as not "working out quite fairly" between the dental assistants.

Concerning claimant's allegation that her employer performed unnecessary dental procedures on welfare patients, we hold that the negative opinion of one untrained in the area of complaint will not sustain the burden of proving necessitous and compelling cause to terminate the employment relationship.

Order affirmed.

---

[5] The bookkeeper was, herself, unaffected by the institution of the quota system, since it was applicable only to the dental assistants. The testimony establishes that once a set quota of patients had been processed on the one weekday set aside for welfare patients, one assistant could go home. Each week they would alternate. Apparently one girl went home considerably earlier than the other during the two weeks the system was operable.

260

## ORDER

AND Now, this 19th day of April, 1982, the order of the Unemployment Compensation Board of Review, entered March 17, 1980, to No. B-182062, by which the Board denied benefits, is hereby affirmed.

This decision was reached prior to the resignation of Judge MENCER.

---

DISSENTING OPINION BY JUDGE ROGERS:

In *Zinman v. Unemployment Compensation Board of Review*, 8 Pa. Commonwealth Ct. 649, 305 A.2d 380 (1973), we held that an employee was eligible for unemployment benefits when she left her position as an office employee because she was required by a newly instituted office rule to monitor telephone conversations recorded by her employer without the knowledge of the conversants, reasoning that since the recording of persons' telephonic conversations without their permission was a misdemeanor, her quitting was sensible and prudent and hence with compelling and necessitous cause.

Here it is undisputed and the referee found that the claimant quit her job as a dental technician because of the employer's conduct with regard to the treatment of medical assistance patients and his practice of submitting bills to the Commonwealth for dental examinations of medical assistance patients which were never performed. Indeed, the employer, Dr. Sakol, testified that he did engage in the practice to which the claimant objected:

Q: What type of an examination is given then?

A: Most people were given an x-ray. In some instances, they were given an x-ray and a visual examination; if the time was extremely hurried as it was in many instances, an x-ray

was performed, and the patient was rescheduled at which time an examination and further review would be made. Unfortunately much to my regret, 50% of the time these patients did not return and it was

. . . .

Q: Okay. So you do admit that there were times that a patient would be ordered to have an examination and an x-ray. An x-ray would be performed. There would not be the time for an examination.

A: Now, excuse me. One other point. We also have—I don't have the

Q: Answer my question first.

A: Well, what was your question again?

Q: My question was, you do admit then that there were times that the DPA people—you would order x-ray and examination and that charge would be made to the State, eleven dollars.

A: That is correct.

Q: And that person would be x-rayed.

A: That's right.

Q: But because of the time constraints, there was no time for the visual examination by you as a dentist?

A: It is my understanding—to answer the question, yes.

The referee dismissed the claimant's attempt to establish the prudence of her resignation with the following factual findings:

6. The claimant further alleges that her employer was involved in illegal activities whereby he would bill the Commonwealth of Pennsylvania for dental services which had not been performed.

7. The claimant was not involved in these alleged illegal activities.

We have recently restated the central proposition of *Zinman* as follows:

One who is employed by an enterprise engaged in illegal activities as part of its usual business has a good cause for leaving such work even if the particular employee is not required to engage in those activities.

*Gould v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 42, 45, 430 A.2d 731, 732 (1981). Therefore it is clear that the referee erred in the application of the law to these facts.

The majority distinguishes this case from *Zinman* on the ground that the illegal office procedures here objected to had been in effect for some time prior to the claimant's resignation. The effect of this circumstance, it seems to me, cannot be more than that of casting some doubt on the claimant's assertion that her resignation was motivated by her objection to the employer's practices. The majority seems to have entertained this doubt when it asserts that the office practice motivating Ms. Onuska's resignation was one newly instituted which required her to work longer hours than a coworker. However, the factfinder resolved this issue in the claimant's favor when he found that she resigned on account of the employer's alleged conduct with respect to the treatment of medical assistance patients and the submission of bills to the Commonwealth.[1]

Of course it is unlawful to bill the State for dental services not actually rendered. See 55 Pa. Code

---

[1] Moreover, the commencement of the pertinent period of the delay would not be marked by the employer's institution of the objectionable practices but by the employee's realization of their illegality; an issue on which there is no evidence in this record.

§§1101.73 and 1101.74. Surely, it was not the claimant's burden to show that she was required personally to prepare fraudulent bills. It was in my view sufficient for her to show that she quit because she objected to practices in her work place which she reasonably believed to be, and which were in fact, unlawful.